**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE MEREWETHER,<br><br>  Plaintiff,<br><br>  v.<br><br>TREMONT MORTGAGE TRUST, JOHN L. HARRINGTON, MATTHEW P. JORDAN, WILLIAM A. LAMKIN, JOSEPH L. MOREA, and ADAM D. PORTNOY,<br><br>  Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff George Merewether ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1. This is an action against Tremont Mortgage Trust ("Tremont" or the "Company") and its Board of Trustees (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Tremont by RMR Mortgage Trust ("RMRM").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in this District, including having provided a mortgage loan on an industrial facility located in Barrington, N.J. (Camden County).

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Tremont common stock.

7. Defendant Tremont is a real estate investment trust focusing on originating and investing in first mortgage loans secured by middle market and transitional commercial real estate in the United States. The Company is incorporated in Maryland. The Company's common stock trades on the NASDAQ under the ticker symbol, "TRMT."

8. Defendant John L. Harrington ("Harrington") is a trustee of the Company and of RMRM.

9. Defendant Matthew P. Jordan ("Jordan") is a managing trustee of the Company and of RMRM.

10. Defendant William A. Lamkin ("Lamkin") is a trustee of the Company.

11. Defendant Joseph L. Morea ("Morea") is a trustee of the Company. Defendant Morea previously served as a trustee of RMRM.

12. Defendant Adam D. Portnoy ("Portnoy") is a managing trustee of the Company and of RMRM.

13. Defendants Harrington, Jordan, Lamkin, Morea, and Portnoy are collectively referred to herein as the "Individual Defendants."

14. Defendants Tremont and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

15. On April 26, 2021, Tremont and RMRM announced that they had entered into a definitive merger agreement pursuant to which Tremont would merge with and into RMRM, with RMRM continuing as the surviving company. Under the terms of the merger agreement, each Tremont common share will be converted into 0.520 of one newly issued RMRM common share.

The press release announcing the Proposed Transaction states, in pertinent part:

### RMR Mortgage Trust and Tremont Mortgage Trust Announce Agreement to Merge

*Creates a Diversified Commercial Mortgage REIT with Fully Invested Total Assets Expected to Approach $1 Billion*

*Expected to be Accretive to 2022 Distributable Earnings*
*Increases Financial Strength with Improved Access to Capital Markets and Expanded Shareholder Liquidity*

*Conference Call Scheduled for 10:00 a.m. Eastern Time on April 28, 2021*

April 26, 2021 04:45 PM Eastern Daylight Time

NEWTON, Mass.--(BUSINESS WIRE)--RMR Mortgage Trust (Nasdaq: RMRM) and Tremont Mortgage Trust (Nasdaq: TRMT) today announced that they have entered into a definitive merger agreement pursuant to which TRMT will merge with and into RMRM, with RMRM continuing as the surviving company. The merger is expected to create a more diversified commercial mortgage real estate investment trust, or REIT, focused on middle market transitional bridge loans with assets expected to approach $1 billion when fully invested. The merger is expected to be accretive to distributable earnings in 2022 with the potential to realize annual expense savings of $1.4 million to $1.6 million, or $0.10 to $0.11 per common share, due to the elimination of certain duplicative public company costs.

\*   \*   \*

Under the terms of the merger agreement, each TRMT common share will be converted into 0.520 of one newly issued RMRM common share. Based on the closing prices of RMRM's and TRMT's common shares on Friday, April 23, 2021, the implied offer price is approximately $6.55 per TRMT common share, which represents a premium of 6% and 9% to the closing price and the volume weighted average price, respectively, for the 30 trading days ending on April 23, 2021. Upon the closing of the merger, RMRM shareholders are expected to own approximately 70% of the combined company's outstanding common shares, while TRMT shareholders are expected to own approximately 30% of the combined company's outstanding common shares.

Based on the closing price of RMRM's common shares on April 23, 2021, the equity market capitalization of the combined company would be approximately $180 million. Tremont Realty Advisors LLC, the manager of RMRM and TRMT, or the Manager, will continue to manage the combined company and has waived

any termination fee that would otherwise be payable by TRMT as a result of the merger.

* * *

The merger and other transactions contemplated by the merger agreement and the terms thereof were evaluated, negotiated and recommended, as applicable to each of RMRM's and TRMT's board of trustees by special committees of each of RMRM's and TRMT's board of trustees, respectively, each comprised solely of RMRM's and TRMT's disinterested, independent trustees, respectively, and were separately unanimously approved and adopted by RMRM's and TRMT's independent trustees and by RMRM's and TRMT's board of trustees, with independent trustees unanimously approving the merger and other transactions contemplated by the merger agreement.

The merger is expected to close during the third quarter of 2021, subject to the requisite approvals by RMRM and TRMT shareholders and other customary closing conditions. RMRM's greater than 5% shareholder has agreed to vote in favor of the issuance of common shares in the merger at RMRM's special meeting of shareholders. TRMT's greater than 5% shareholder has agreed to vote in favor of the merger and other transactions contemplated by the merger agreement at TRMT's special meeting of shareholders.

UBS Investment Bank is acting as exclusive financial adviser to the RMRM special committee and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to RMRM (acting through the special committee). Citigroup Global Markets Inc. is acting as exclusive financial adviser to the TRMT special committee and Sullivan & Worcester LLP is acting as legal adviser to TRMT (acting through the special committee).

* * *

**About RMR Mortgage Trust and Tremont Mortgage Trust**

RMR Mortgage Trust (Nasdaq: RMRM) and Tremont Mortgage Trust (Nasdaq: TRMT) are real estate finance companies that originate and invest in first mortgage loans secured by middle market and transitional commercial real estate. RMRM and TRMT are managed by an affiliate of The RMR Group Inc. (Nasdaq: RMR). Substantially all of RMR's business is conducted by its majority owned subsidiary, The RMR Group LLC, which is an alternative asset management company with $32 billion in assets under management and more than 35 years of institutional experience in buying, selling, financing and operating commercial real estate. For more information about RMRM and TRMT, please visit www.rmrmortgagetrust.com and www.trmtreit.com.

**About Tremont Realty Capital**

> Tremont Realty Capital, on behalf of its capital sources, Tremont Mortgage Trust (Nasdaq: TRMT) and RMR Mortgage Trust (Nasdaq: RMRM), is a direct lender that invests in loans secured by middle market and transitional commercial real estate. Tremont Realty Capital is the trade name of Tremont Realty Advisors LLC, which is an affiliate of The RMR Group Inc. (Nasdaq: RMR). For more information about Tremont Realty Capital, please visit www.tremontcapital.com.

16. On June 9, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

### B. The Registration Statement Contains Materially False and Misleading Statements and Omissions

17. The Registration Statement, which recommends that Tremont shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Tremont's and RMRM's financial projections; (ii) the financial analyses performed by Tremont's financial advisor, Citigroup Global Markets Inc. ("Citi"), in connection with its fairness opinion; and (iii) potential conflicts of interest involving Citi.

18. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Certain Prospective Financial Information of RMRM; (ii) Certain Prospective Financial Information of TRMT; (iii) Recommendation of the TRMT Board of Trustees and its Reasons for the Merger and the Other Transactions; and (iv) Opinion of Financial Advisor to the TRMT Special Committee.

19. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Tremont shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Tremont's and RMRM's Financial Projections

20. The Registration Statement omits material information concerning Tremont's and RMRM's financial projections.

21. The Registration Statement provides that UBS Securities LLC, the financial advisor for RMRM, performed discounted cash flow analyses on Tremont and RMRM by "analyz[ing] the future cash flows of TRMT [and RMRM] using financial forecasts and estimates prepared by the management of TRMT [and RMRM, respectively][.]" *See* Registration Statement at 118.

22. Similarly, Citi utilized "financial data . . . for TRMT and RMRM in [its] financial analyses [that] were based on certain financial forecasts and other information and data relating to TRMT and RMRM provided to or discussed with Citi by the managements of TRMT and TRA, referred to [as] . . . the 'TRMT forecasts' and by the managements of RMRM and TRA, referred to . . . as the 'RMRM forecasts,' respectively." *See* Registration Statement at 126.

23. While the Registration Statement purports to provide a summary of the "RMRM Standalone Income Statement Projections" and the "RMRM Standalone Balance Sheet Projections" for the years ending December 31, 2021 through 2025, these projections fail to disclose future cash flows and their underlying line items, as referred to in part by UBS. Further, the Registration Statement fails to disclose whether these projections are the same as the "RMRM forecasts," as referred to by Citi, and must provide an explanation as to how they differ from the "RMRM forecasts," if at all.

24. While the Registration Statement purports to provide a summary of the "TRMT Standalone Income Statement Projections" and the "TRMT Standalone Balance Sheet Projections" for the years ending December 31, 2021 through 2025, these projections fail to disclose future cash flows and their underlying line items, as referred to in part by UBS. Further, the Registration

Statement fails to disclose whether these projections are the same as the "TRMT forecasts," as referred to by Citi, and must provide an explanation as to how they differ from the "TRMT forecasts," if at all.

25. The disclosure of the aforementioned projected financial information is material because it would provide Tremont shareholders with a basis to project the future financial performance of Tremont and the combined company and would allow shareholders to better understand the financial analyses performed by Tremont's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Tremont and its financial advisor, Tremont shareholders are unable to determine how much weight, if any, to place on the Company's advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Tremont shareholders.

 **2. Material Omissions Concerning Citi's Analyses**

27. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Citi.

28. The Registration Statement fails to disclose the following concerning Citi's "*Dividend Discount Analyses*" of Tremont: (1) the dividends that Tremont was forecasted to pay during the calendar years ending December 31, 2021 through December 31, 2025; (2) the terminal values for Tremont; and (3) the individual inputs and assumptions underlying the (i) range of BVPS multiples of 0.90x to 1.10x, and (ii) range of discount rates of 22.2% to 30%.

29. The Registration Statement fails to disclose the following concerning Citi's "*Dividend Discount Analyses*" of RMRM: (1) the dividends that RMRM was forecasted to pay

during the calendar years ending December 31, 2021 through December 31, 2025; (2) the terminal values for RMRM; and (3) the individual inputs and assumptions underlying the (i) range of BVPS multiples of 0.90x to 1.10x, and (ii) range of discount rates of 17.7% to 25.4%.

30.     The Registration Statement fails to disclose the following concerning Citi's "*Selected Public Companies Analyses*" and "*Selected Precedent Transactions Analysis*": (1) the individual multiples and financial metrics of each company and transaction Citi observed in its analyses; (2) the closing dates of each transaction, as applicable; and (3) the total values of each transaction, as applicable.

31.     With respect to Citi's analysis of the illustrative potential pro forma financial effect of the Proposed Transaction on Tremont's calendar year 2022 estimated distributable EPS and BVPS, the Registration Statement fails to disclose: (1) the potential cost savings anticipated by the managements of Tremont, RMRM and Tremont Realty Advisors LLC to result from the Proposed Transaction; and (2) the extent to which the Proposed Transaction could be, relative to Tremont on a standalone basis, accretive to Tremont's calendar year 2022 estimated distributable EPS and dilutive to Tremont's BVPS (as of December 31, 2020).

32.     With respect to Citi's illustrative theoretical value uplift analysis, the Registration Statement fails to disclose the Wall Street research analysts' estimates used in the analysis.

33.     The valuation methods, underlying assumptions, and key inputs used by Citi in rendering its purported fairness opinion must be fairly disclosed to Tremont shareholders. The description of Citi's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Tremont shareholders are unable to fully understand Citi's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for

or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Citi

34. The Registration Statement omits material information concerning potential conflicts of interest involving Citi.

35. The Registration Statement provides that, during the approximately two-year period prior to the date of Citi's opinion, "Citi and its affiliates received . . . aggregate fees of approximately $37.0 million from [Tremont], RMR Inc. and/or certain entities managed by or that receive business management services from RMR Inc. or its affiliates."

36. The Registration Statement, however, fails to disclose the specific amount of compensation that Citi received or expects to receive from ***each*** of Tremont, RMR Inc., and/or their affiliates, ***respectively***, within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the specific amount of compensation received by the advisor from the company during the past two years). The Registration Statement further fails to disclose the specific amount of compensation Citi received for each purported service it provided to Tremont, RMR Inc., and/or their affiliates during the past two years of the date of its fairness opinion.

37. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

38. The omission of the above-referenced information renders the Registration

Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

39. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

41. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

42. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

44. Because of the false and misleading statements and omissions in the Registration

Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

45. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited

access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

49. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 29, 2021

Respectfully submitted,

**HALPER SADEH LLP**

/s/ Zachary Halper
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

*Counsel for Plaintiff*